RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0117p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FRANK MICHAEL SUSANY, JR.,

*Defendant-Appellant.*

> No. 17-4093

---

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:16-cr-00312-1—Donald C. Nugent, District Judge.

Decided and Filed:  June 22, 2018

Before:  MOORE, KETHLEDGE, and STRANCH, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:**  Russell S. Bensing, Cleveland, Ohio, for Appellant.  Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

---

**OPINION**

---

JANE B. STRANCH, Circuit Judge.  Frank Susany, Jr. pled guilty to one count of conspiracy to knowingly receive and transport explosive materials, in violation of 18 U.S.C. §§ 371, 842(a)(3)(A), and 844(a).  The district court granted a three-level downward variance from Susany's advisory Guidelines range and imposed a sentence of 21 months of imprisonment, followed by a two year period of supervised release.  Susany appeals that sentence, arguing that the district court imposed a sentence that was procedurally unreasonable because it failed to

reduce Susany's base offense level by three points, pursuant to the United States Sentencing Guidelines (USSG) § 2X1.1(b)(2). Although the district court erred by not reducing Susany's offense level under § 2X1.1(b)(2), we find the error to be harmless, and therefore **AFFIRM**.

## I. BACKGROUND

Between February and April 2013, Susany entered into a conspiracy with Robert Courtney and James Quinn to obtain explosives that would be used to crack safes at jewelry stores and coin shops. The trio planned to obtain funds to finance their initial purchase of explosives by breaking into jewelry stores and coin shops to steal valuable items. On February 13, 2013, Susany and Quinn met with a confidential informant, who was working with the FBI. During the meeting, Susany and the confidential informant discussed procuring explosives for use in burglaries that Susany planned to commit. Susany and Quinn met with the confidential informant again the next month and this time talked about the confidential informant participating the in break-ins. On April 1, Susany met with the confidential informant and told him to plan for a "job."

On the evening of April 18, Susany, Courtney, and the informant met to plan the details of a break-in at Westlake Coins and Collectibles. Quinn was not present. In the early hours of April 19, Susany, Courtney, and the informant arrived at the store, and Courtney was selected to serve as a lookout. Susany cut the phone line to the store and activated a jamming device to block the cellular backup to the store's alarm system. Officers arrived and arrested the three individuals shortly after the alarm was cut.

Susany, Courtney, and Quinn were indicted on September 28, 2016. In addition to the charges for conspiracy to receive and transport explosives, Susany was also indicted on one count related his use of the jamming device, a violation of 47 U.S.C. §§ 301(d) and 501. Susany pled guilty; in exchange for his plea, the government agreed to drop the charges related to his use of the jamming device. The probation officer prepared a Presentence Investigative Report (PSR) that calculated Susany's base offense level to be 16, which was reduced to 13 as a result of Susany's timely acceptance of responsibility, pursuant to USSG § 3E1.1. Counsel for Susany filed a sentencing memorandum arguing that Susany should receive a three-level decrease in his

base offense level pursuant to USSG § 2X1.1(b)(2), which mandates a decrease when the defendant and the co-conspirators have not completed all the acts necessary for the substantive offense. USSG § 2X1.1(b)(1)–(2). Defense counsel raised the § 2X1.1 issue again at Susany's sentencing hearing. The district court rejected Susany's argument stating, "I'm not comfortable under the 2X1.1(b)(2) to grant the three-level reduction because I'm not quite sure that would be right." The district court instead decided to grant a three-level downward variance based on the nature and circumstances of the offense and reduced Susany's base offense level to ten, yielding a Guidelines range of 21 to 27 months of imprisonment. The district court imposed a sentence of 21 months. Susany filed a timely notice of appeal.

## II. ANALYSIS

### A. Standard of Review

We review the "sentencing court's factual findings for clear error." *United States v. Ramer*, 883 F.3d 659, 684 (6th Cir. 2018) (citing *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013)) *petition for cert. filed*, No. 17-9085 (U.S. May 23, 2018). "But 'whether those facts as determined by the district court warrant the application of a particular guideline provision is purely a legal question and is reviewed *de novo* by this court.'" *Id.* (quoting *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006)). We review a district court's sentencing determination "'under a deferential abuse-of-discretion standard,' for reasonableness." *United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017) (quoting *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015)). "Reasonableness is comprised of both procedural and substantive reasonableness." *United States v. Adams*, 873 F.3d 512, 516 (6th Cir. 2017).

The sole issue on appeal is whether the district court erred when it determined that Susany was not entitled to a three-level reduction in his base offense level pursuant to § 2X1.1(b)(2), rendering Susany's sentence procedurally unreasonable. Because Susany has sufficiently preserved this issue for appeal and expressly reserved the right to appeal this issue, we review the district court's factual findings for clear error but review the application of § 2X1.1(b)(2) de novo.

**B.      USSG § 2X1.1(b)(2)**

Section 2X1.1(b)(2) provides for a three-level reduction to a defendant's base offense level for most incomplete conspiracies:

> If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

USSG § 2X1.1(b)(2).    We must therefore determine whether Susany and his fellow co-conspirators completed all the acts necessary for the substantive offense or were about to do so but for their apprehension.   USSG § 2X1.1(b)(2).   Our focus is limited to the "substantive offense and the defendant's conduct in relation to that specific offense."   *United States v. Soto*, 819 F.3d 213, 217 (5th Cir. 2016).

Although Susany was arrested during the course of a burglary, the substantive offense underlying his conspiracy conviction was conspiracy to knowingly receive and transport explosive materials, in violation of § 842(a)(3)(A).   The statute specifies that it is unlawful for anyone other than a federally authorized licensee or permittee to knowingly "transport, ship, cause to be transported, or receive any explosive materials."    18 U.S.C. § 842(a)(3)(A). Accordingly, our inquiry focuses on whether Susany and his co-conspirators had either completed all of the acts necessary to receive and transport explosives or were about to complete those acts but for their apprehension.

In analyzing a § 2X1.1 reduction, we begin with what it means to be "about to complete" all acts necessary to the substantive offense.   "[U]nless the remaining steps to be taken in the commission of a crime are so insubstantial that the commission of the substantive offense is inevitable, barring an unforeseen occurrence that frustrates its completion, the conspirators are *not* about to complete the requisite acts and the defendant must be granted the three point reduction."   *United States v. Martinez-Martinez*, 156 F.3d 936, 939 (9th Cir. 1998).   A court should also consider the "temporal frame of the scheme and the amount of time the defendant would have needed to finish his plan, had he not been interrupted."   *Soto*, 819 F.3d at 218. A reduction pursuant to § 2X1.1 may be denied only if all crucial steps for committing the

substantive offense either have already been completed or the co-conspirators would have been capable of the commission of the substantive offense within a negligible intervening time.

At the time of their arrest, Susany and his co-conspirators had not secured a source of explosives nor had they discussed the details of purchasing the explosives with the confidential informant. The co-conspirators had not determined the type or amount of explosives to be purchased, much less attempted to actually procure explosives for purchase. Even if Susany and his co-conspirators had succeeded in stealing items from Westlake Coins and Collectibles, there is no indication that they could have simply traded those items for explosives or had a plan to do so. Rare coins are the type of contraband that likely must be "fenced"[1] in order to convert the coins into currency that could be used to purchase explosives. No evidence suggests that Susany and his co-conspirators had even identified a fence.

Here, the Defendants needed to execute multiple intervening steps to commit the substantive offense. Before they could accomplish the early steps of undertaking the break-ins needed to raise money to purchase explosives, however, Defendants were arrested. Under these circumstances, Susany and his co-conspirators were not "about to complete" the substantive offense with which they were charged. The Government concedes this much. The district court therefore erred in denying Susany's request to reduce his base offense level pursuant to § 2X1.1(b)(2).

### C. Harmless Error

Although the Government concedes that the district court erred, it argues that the error was harmless and did not prejudice Susany. Generally, when a district court erroneously applies an incorrect higher Guidelines range, a defendant can demonstrate that the error was not harmless and that there is "a reasonable probability of a different outcome." *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). The government bears the burden of proof on harmless error; it must establish that the error did not affect the defendant's substantial rights to render a remand unnecessary. *United States v. Johnson*, 467 F.3d 559, 564–65 (6th Cir.

---

[1]Black's Law Dictionary defines a fence as "[s]omeone who receives stolen goods, usu. with the intent to sell them in a legitimate market." Black's Law Dictionary (10th ed. 2014).

2006). "Sentencing errors are harmless where this court is convinced that the 'error at sentencing did not cause the defendant to receive a more severe sentence' than would have existed without the error." *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014) (quoting *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009)).

Applying these considerations to Susany's case, we begin with his base offense level of 16. Had the district court properly applied a three-level reduction pursuant to § 2X1.1, Susany would have had a base offense level of 13. Because the provisions of § 3E1.1 specify that a defendant is entitled to a two-level reduction for acceptance of responsibility when the base offense level is less than 16, Susany's offense level of 13 would have been reduced to 11 if the reduction pursuant to § 2X1.1 had been applied. Had the district court pursued this path, Susany's base offense level would have been 11 with a criminal history category of V, yielding an advisory Guidelines range of 24 to 30 months of imprisonment.

When the district court failed to apply the reduction pursuant to §2X1.1, Susany's base offense level remained at 16, which qualified for the higher, three-level reduction for acceptance of responsibility. That reduction brought Susany's base offense level to 13. The district court then applied a three-level downward variance based on the nature and circumstances of the offense. This reduced Susany's base offense level to ten, which, with a criminal history category of V, resulted in an advisory Guidelines range of 21 to 27 months of imprisonment.

In other words, had the district court properly applied the § 2X1.1 Guideline, Susany would have had a higher base offense level, yielding a higher advisory sentencing range. The district court specifically clarified that it "might not have granted" the three-level downward variance had the § 2X1.1 reduction been applied. The district judge stated "I think if I granted that, I might not have granted the nature and circumstances of the offense [downward variance]. So you're getting what you asked for; in a different way."

Susany's case thus falls within a very unusual circumstance—the district court's error resulted in a lower advisory sentencing range than would have resulted under the correct Guidelines calculation. We are also persuaded that the district court indicated that it provided Susany a downward variance based on the nature and circumstances of the offense, giving him

"what [he] asked for; in a different way." In this rare situation, the error did not cause Susany to receive a more severe sentence than he would have received without the error. The district court's error was therefore harmless and a remand is unnecessary. This conclusion is supported by and consistent with our recent decision in *United States v. Quinn*, No. 17-4082 (6th Cir. Feb. 12, 2018) (order), involving Susany's co-defendant. Quinn raised the identical § 2X1.1 issue and we determined that he was not prejudiced by the district court's error because the error resulted in a lower advisory Guidelines range. Likewise here, Susany was not prejudiced by the district court's error.

### III. CONCLUSION

Although the district court erred when it refused to reduce Susany's offense level pursuant USSG § 2X1.1(b), the error was harmless. We therefore **AFFIRM** Susany's sentence.